UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                           Plaintiffs,          08-civ-567 (SHS)

          -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                          Defendants.

X-------------------------------------------------------------X

<u>DECLARATION OF DANIEL L. ACKMAN</u>

      Daniel L. Ackman declares pursuant to 28 U.S.C. § 1746:

      1.      I am a member of the New York bar and attorney for the plaintiffs in this action.

I submit this declaration in support of plaintiffs' motion for a default judgment pursuant to Rule

55 of the Federal Rules of Civil Procedure.

      2.      Plaintiffs commenced this action on January 23, 2008 with the filing of a

summons and complaint.[1]  As detailed in the Clerk's Certificate (attached as Exh. A) all

defendants, apart from defendant Diane McGrath-McKechnie, were personally served that same

day.  A copy of the complaint is attached as Exhibit B.   None of the defendants are infants, in

the military or otherwise incompetent.  (Ms. McGrath-McKechnie was served in person at her

home in Florida on February 2.)

---

[1] A substantially similar action was filed in the Eastern District of New York on October 12, 2007.  Defendants refused to answer that complaint as well.  The EDNY action was voluntarily dismissed on January 23, 2007, just before the instant action was filed.

3.      Defendants, through their counsel, Amy J. Weinblatt, Esq., applied to transfer the action and for an extension of time to answer by letter dated February 1, 2008.  This application has not been granted.

4.      Defendants' answer was due on February 12, but none was served or filed.  (Ms. McGrath-McKechnie's answer is due on February 22.)  On February 13, I exchanged a letter (by fax) and e-mails with Ms. Weinblatt.  In that letter and in subsequent e-mails, I reminded her that defendants' answer was past due and said plaintiffs would seek a default judgment if none was filed by the end of the week (February 15).  Ms. Weinblatt replied that she had applied for an extension and a consolidation of this action with *Nnebe v. Daus*, 06 Civ. 4991 (RJS), pending before Judge Sullivan.  She acknowledged that no enlargement of time had been granted.

5.      Later in the day (February 13) Judge Stein issued an order for an initial pretrial conference, saying this case had been assigned to his court for all purpose.  The order was filed and served by ECF on February 14.  I served a copy of that order on Ms. Weinblatt by mail and by e-mail that day (February 14).  She had received it by ECF as well.

6.      Ms. Weinblatt stated the February 14 order did not alter her position, and that she would not file an answer at this time.

7.      Plaintiffs submit that defendants' deliberate refusal to answer the complaint merits a default judgment.  We submit that the Court should certify the proposed plaintiff class and accept evidence or hold a hearing to determine damages for the named plaintiffs and for all others similarly situated.   A form of default judgment is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
February 20, 2008


_____/s/_____
Daniel L. Ackman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                                    Plaintiffs,          08-civ-567 (SHS)

            -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                                    Defendants.

X------------------------------------------------------------------X

<u>DECLARATION OF DANIEL L. ACKMAN</u>

Daniel L. Ackman declares pursuant to 28 U.S.C. § 1746:

1.      I am a member of the New York bar and attorney for the plaintiffs in this action.

I submit this declaration in support of plaintiffs' motion for a default judgment pursuant to Rule

55 of the Federal Rules of Civil Procedure.

2.      Plaintiffs commenced this action on January 23, 2008 with the filing of a

summons and complaint.[1]  As detailed in the Clerk's Certificate (attached as Exh. A) all

defendants, apart from defendant Diane McGrath-McKechnie, were personally served that same

day.  A copy of the complaint is attached as Exhibit B.   None of the defendants are infants, in

the military or otherwise incompetent.  (Ms. McGrath-McKechnie was served in person at her

home in Florida on February 2.)

---

[1] A substantially similar action was filed in the Eastern District of New York on October 12, 2007.  Defendants
refused to answer that complaint as well.  The EDNY action was voluntarily dismissed on January 23, 2007, just
before the instant action was filed.

3.      Defendants, through their counsel, Amy J. Weinblatt, Esq., applied to transfer the action and for an extension of time to answer by letter dated February 1, 2008. This application has not been granted.

4.      Defendants' answer was due on February 12, but none was served or filed. (Ms. McGrath-McKechnie's answer is due on February 22.) On February 13, I exchanged a letter (by fax) and e-mails with Ms. Weinblatt. In that letter and in subsequent e-mails, I reminded her that defendants' answer was past due and said plaintiffs would seek a default judgment if none was filed by the end of the week (February 15). Ms. Weinblatt replied that she had applied for an extension and a consolidation of this action with *Nnebe v. Daus*, 06 Civ. 4991 (RJS), pending before Judge Sullivan. She acknowledged that no enlargement of time had been granted.

5.      Later in the day (February 13) Judge Stein issued an order for an initial pretrial conference, saying this case had been assigned to his court for all purpose. The order was filed and served by ECF on February 14. I served a copy of that order on Ms. Weinblatt by mail and by e-mail that day (February 14). She had received it by ECF as well.

6.      Ms. Weinblatt stated the February 14 order did not alter her position, and that she would not file an answer at this time.

7.      Plaintiffs submit that defendants' deliberate refusal to answer the complaint merits a default judgment. We submit that the Court should certify the proposed plaintiff class and accept evidence or hold a hearing to determine damages for the named plaintiffs and for all others similarly situated. A form of default judgment is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
February 20, 2008

_____/s/_____
Daniel L. Ackman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

08-civ-567 (SHS)

          Plaintiffs,    **CLERK'S CERTIFICATE**

    -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

          Defendants.

X------------------------------------------------------------------X

   I, J. MICHAEL McMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on January 23, 2008 with the filing of a summons and complaint, a copy of the summons and complaint was served on defendants MATTHEW DAUS, JOSEPH ECKSTEIN, ELIZABETH BONINA & THOMAS COYNE by serving John Bolles, a clerical associate of the NYC Taxi and Limousine Commission, in person at the NYC Taxi and Limousine Commission offices; and with the service of the NYC TAXI AND LIMOUSINE COMMISSION & THE CITY OF NEW YORK by serving Jerry Bradshaw, in person at the intake desk of the NYC Law Department.  Proof of service was filed on January 29, 2008.

I further certify that the docket entries indicate that the listed defendants have not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendants is hereby noted.

Dated: New York, New York
       February 20, 2008

**J. MICHAEL McMAHON**
Clerk of the Court

By:
_____/s/_____
        Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                                         Plaintiffs,

            -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                                      Defendants.

X------------------------------------------------------------------X

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
DAMAGES**

**JURY TRIAL DEMANDED**

      Plaintiffs Saul Rothenberg, Ebrahim Abood and Tobby Kombo, individually and on

behalf of all others similarly situated, by their attorney, Daniel L. Ackman, as and for their

complaint, allege as follows:

## NATURE OF THE ACTION

      1.      The New York City Taxi and Limousine Commission (TLC) as matter of

policy revokes the taxi license of taxi driver who fails an annual drug test.  The TLC also

pursuant to an unwritten policy revokes the taxi license of any driver who is convicted of

certain unspecified crimes, including misdemeanor offenses.  (The crimes that lead to

revocation are not stated or listed publicly.)  Though there is no written statute mandating

such revocations, the TLC orders them routinely and without regard to the taxi driver's

record or the facts and circumstances of his offense.  While the TLC holds so-called fitness

hearings prior to the revocations, in fact, virtually every taxi driver who fails a drug test has his license revoked.   By the same token, taxi drivers convicted of certain unspecified crimes have their licenses revoked in practically every instance.   Neither revocation policy is authorized by statute.  None of the so-called fitness hearings comport with due process standards or state law.

2.      The revocation hearings, conducted by TLC Administrative Law Judges (TLC judges or ALJs) are a sham.  The TLC's practice at such hearings is to call no witnesses.  The TLC, moreover, presents no evidence at these hearings apart from the result of a drug test or documentation of the conviction.  The judges are hired by the TLC.  They have no tenure, contract, or term in office—no job security of any kind.  Among other defects in process, the TLC makes no effort to sustain its burden of proof at such hearings.  Nevertheless, the outcome of such hearings is guaranteed.

3.      At the conclusion of the revocation hearing, the TLC judge, guided by *ex parte* communications and unwritten policies, invariably "recommends" to the TLC chairperson that license be revoked.  The chairperson invariably accepts that recommendation.

4.      Plaintiffs bring their claims pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983, the New York State Constitution, and New York law.  They seek redress for defendants' deprivation, under color of state law, of their rights, privileges, and immunities secured by the Constitution and laws of the United States and by the New York State Constitution.  As the TLC's practice has no basis in state or city law, and indeed violate state law, plaintiffs seek redress under state law as well.

## JURISDICTION AND VENUE

5.      This action arises under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the New York State Constitution, Article 1, § 12.

6.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, and 2201.

7.      The acts complained of occurred in part in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).  The Taxi and Limousine Commission maintains its headquarters in the Southern District of New York.

## JURY DEMAND

8.      Plaintiffs demand trial by jury in this action.

## PARTIES

9.      Plaintiff Saul Rothenberg became a New York City Taxi Driver starting in 1977 and has been licensed continually since 1985.  He has owned his own taxi medallion since 1985 as well.  His license was revoked by defendant TLC on July 25, 2007 for failing his annual drug test.  He is a resident of Queens County.

10.      Plaintiff Ebrahim Abood became a New York City Taxi Driver starting in 2000.  His license was revoked by defendant TLC on in late May 2006 for failing his annual drug test.  He is a resident of New York County.

11.      Plaintiff Tobby Kombo had been a New York City Taxi Driver since 1976.  His license was revoked on June 20, 2007 upon his conviction of assault in the second degree, for which he was sentenced to probation.   He is a resident of Queens County.

12.    Defendant Matthew Daus is chairperson of the Taxi and Limousine Commission.  He has overall responsibility for enforcing TLC policy.  He is responsible for implementing and overseeing the policies of the commission and for ensuring that TLC personnel obey the Constitution and laws of the United States and of the State of New York.

13.    Defendant Diane McGrath-McKechnie is the former chairperson of the Taxi and Limousine Commission.   On information and belief (including TLC records and internal TLC documents) she was responsible for implementing the drug test revocation policy and the criminal conviction revocation policy, doing so without a vote by or consent of the TLC commissioners.

14.    Defendant Joseph Eckstein is a deputy commissioner of the TLC in charge of its Adjudications Department.

15.    Defendant Elizabeth Bonina is (or was at the relevant time) the Chief Administrative Law Judge of the TLC.

16.    Defendant Thomas Coyne is (or was at the relevant time) Deputy Chief Administrative Law Judge of the TLC in charge of "fitness" hearings.

17.    Defendant Taxi and Limousine Commission is an agency of the City of New York charged with licensing taxi drivers, for-hire vehicle drivers and limousine drivers and regulating the taxi industry.  Its headquarters is in New York County; the office housing most of its employees is in Queens County.  The TLC is a non-mayoral agency, meaning it is insulated by the City Charter from direct mayoral control.  The TLC is a nine-member commission, with one member acting as chairperson, who also has executive responsibilities. It is empowered by the Charter to act by a majority vote of its members.  In addition to the City Charter, the TLC is governed by the Administrative Code of the City of New York,

enacted by the City Council, and by the TLC rules, enacted by majority vote of the full TLC. In addition, the TLC maintains its own court system, for which it hires the judges, who work on a per diem basis.

18.    Defendant City of New York is a municipality of the state of New York, which includes the TLC as an administrative agency.

## CLASS ACTION ALLEGATIONS

19.    The plaintiff class seeks: (i) a declaration that drug test revocation policy and the criminal conviction revocation policy are unconstitutional and illegal; (ii) an order enjoining defendants from revoking licenses based solely on a failed drug test or a criminal conviction; (iii) a declaration that prior to license revocation a taxi driver must be afforded a proper and meaningful hearing on the merits; (iv) an order mandating that unlawfully revoked licenses be reinstated; and (v) compensatory and punitive damages.

20.    Plaintiffs sue on behalf of themselves and all other similarly situated individuals, and seek to represent, pursuant to Rule 23 (a), Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, two classes comprised of all taxi drivers who have had their licenses revoked absent proper and meaningful hearings on the merits.

21.    The class period commences on the date three years prior to the date of the initial complaint in this case and extends to the date on which the defendants are enjoined from, or otherwise cease, enforcing their unconstitutional policies and practices.

22.    The members of the class are so numerous as to render joinder impracticable. Upon information and belief, based on TLC public records, there are more than 100 drivers whose licenses have been revoked absent meaningful hearings on the merits. In addition, there are more than 41,000 yellow taxi drivers and roughly 60,000 for-hire-vehicle drivers

licensed by the TLC, all of whom are subject to the TLC's license revocation policies.  The

vast majority of New York City taxi drivers are foreign born, most from countries with no

tradition of civil rights.

     23.    Upon information and belief, joinder is impracticable given the number of

absent class members and because many members of the class are low-income persons, many

of whom do not speak English well, and likely would have great difficulty in pursuing their

rights individually.

     24.    The questions of law and fact common to the class include whether the class

members have common rights under the Fifth and Fourteenth Amendments to be free from

unconstitutional license suspensions and revocations.

     25.    The named plaintiffs are adequate representatives of the class.  The violations

of law alleged by the named plaintiffs stem from the same course of conduct by defendants,

which violated and continues to violate the rights of members of the class; the legal theory

under which the named plaintiffs seek relief is the same or similar to that on which the class

will rely.  In addition, the harm suffered by the named plaintiffs is typical of the harm

suffered by absent class members.

     26.    The named plaintiffs have the requisite personal interest in the outcome of this

action and will fairly and adequately protect the interests of the class.  Counsel for the

plaintiffs knows of no conflicts among members of the class.

     27.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because: (a) the prosecution of hundreds or thousands of

separate actions would be inefficient and wasteful of legal resources; (b) the members of the

class may be scattered throughout New York City and State (and abroad) and are not likely to

be able to vindicate and enforce their Constitutional and statutory rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possibly inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants, which would establish incompatible standards of conduct for defendants; (f) defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the class, especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

Drug Testing / Mandatory Revocation:

28.    In order to work as a yellow taxi driver or a for-hire vehicle driver in the City of New York, an individual must possess a valid taxi driver's license (also known as a hack license).

29.    As part of its administrative apparatus, the TLC regularly suspends or revokes the licenses of drivers who are accused of or found in violation of various TLC rule violations.

30.    The TLC requires taxi drivers to submit to annual drug tests, regardless of probable cause, suspicion of drug use, evidence of intoxication or other wrongdoing.

31.    Such tests are conducted by urinalysis exclusively by laboratories designated by the TLC.

32.     There is no statutory authority for TLC drug testing.  That is, while (by statute and rule) an individual who is addicted to drugs may not be granted a taxi license, there is no statute requiring or permitting suspicionless drug testing of taxi drivers.  Nor is there any statute requiring or permitting the revocation of a taxi license based on a drug test failure.

33.     Prior to July 2006, TLC rules specified no penalty for failing a drug test.

34.     The TLC does not consider proof of rehabilitation and does not permit a second test.  (It does allow a re-test, at the taxi driver's expense, but only of the same sample and by the same laboratory.  There are no split samples.)

35.     To date, TLC rules do not state what drugs or controlled substances are being tested for.  TLC rules contain no standard (i.e., what quantity of drug residue in urine) constitutes a failure.

36.     The TLC has made no finding—and indeed conducted no inquiry-- that drug use among taxi drivers has been a problem or a danger in the past.

37.     Since July 2006, TLC rules have stated that if a taxi driver fails his annual drug test, the TLC "may" revoke his license.

38.     In fact, as a matter of policy and practice, the TLC revokes the license of any taxi driver who fails a drug test, regardless of that driver's record as a taxi driver or as a citizen.  This policy was in effect before the July 2006 rule amendment and remains in effect.

39.     TLC rules (but no statute) currently provide that the revocation "may" be ordered after a hearing. In fact, the results of the hearing are pre-ordained with the TLC administrative law judge recommending revocation in practically every case.[1]

---

[1] In recent months, the TLC has indicated it may have started referring some revocation hearings to the Office of Administrative Trials and Hearings, a separate tribunal, but there has been no formal announcement or rule change on this point.

40.     At such hearings, the TLC presents no witnesses, and no evidence apart from a form indicating the alleged results of the drug test.  Accused taxi drivers have no opportunity to challenge the test results or cross-examine anyone involved in the sample collection, the chain of custody or the testing itself.

41.     At such hearings, the TLC makes no effort to prove (or even allege) addiction.

42.     The TLC chair accepts the TLC ALJ revocation recommendation in practically every case and orders revocation.

Criminal Convictions / Mandatory Revocation:

43.     The TLC as a matter or practice and policy suspends the hack license of any taxi driver who is arrested for certain unspecified offenses.  The list of offenses for which arrest has led to suspension has never been made public and changes from time to time, but has always included all felony offenses and many misdemeanor offenses.

44.     In addition, if an applicant for a license discloses a prior conviction, no matter the date of the conviction or its circumstances, he is subject to a standardless "fitness" review and may be denied a license even where the conviction is unrelated to driving a taxi.

45.     If a driver whose license has been suspended following an arrest is ultimately convicted of a felony or misdemeanor, the TLC as a matter or practice and policy revokes the driver's license, regardless of the facts or circumstances of the crime, regardless of whether the allegation involve driving a taxi, and regardless or the driver's prior record as either a taxi driver or a citizen.

46.     There is no statute requiring or permitting this revocation policy.

47.     There is no TLC rule requiring or permitting this revocation policy.

48.     TLC practice is to permit the driver a fitness hearing prior to revocation.

49.     In fact, the results of the hearing are pre-ordained with the TLC administrative law judge recommending revocation in practically every case.

50.     At such hearings, the TLC presents no witnesses, and no evidence apart from documentation of the criminal conviction.

51.     The TLC ALJ recommends revocation in practically every such case.

52.     The TLC chair accepts the TLC ALJ revocation recommendation in practically every such case and orders revocation.

<u>The TLC Tribunal</u>:

53.     The TLC maintains an administrative tribunal which employs ALJs responsible for adjudicating alleged violations of TLC rules.

54.     In addition, some (though not all) of these ALJs conduct fitness hearings at which there is no allegation of a TLC rule violation, but where the issue is whether the taxi driver is "qualified" to hold a license on general grounds.

55.     TLC judges are not independent of the agency.  TLC judges are hired by the TLC on a per diem basis.  They may be fired by the TLC without cause.  They have no contractual, civil service or statutory job protections.

56.     TLC judges are required to request hours of assignment on a monthly basis, but they have no right to any particular hours or days of assignment.  TLC executives supervise the judges and determine their assignments.  In short, the TLC judges are dependent on the TLC executives for the payment of their salaries and the tenure of their offices.

57.     There is a wide variation in pay between one TLC judge and another.

58.    Favored TLC judges may be promoted to more favored positions (such as adjudicating fitness hearings).  Less favored judges may continue to adjudicate ordinary citations.

59.    Favored TLC judges may be hired, and have been hired, to full-time positions within the TLC executive arm.  Such promotions bring added status, job security, and generally an increase in pay.

60.    TLC judges have routinely been instructed about TLC policies (including unwritten policies) on an *ex parte* basis.

TLC Rulemaking:

61.    Like all city agencies, the TLC is governed by the City Charter and the New York City Administrative Code (Administrative Code).  The City Charter enacts the TLC as a nine-member commission which acts by majority vote of its members.  The TLC Chairperson is one member of the commission.  The chairperson has an equal vote with the other commissioners.  He also has executive responsibilities for insuring that the Administrative Code, enacted by the city council, and TLC rules enacted by the nine-member commission be properly executed.

62.    The TLC commissioners have never voted on either the TLC's policy of revoking licenses for any drug test failure or its policy of revoking a license for a criminal conviction.

The Individual Plaintiffs:

63.    Mr. Rothenberg had been a New York City taxi driver since 1977 and has owned a taxi medallion since 1985.  For that entire period he maintained an excellent driving record.

- 11 -

64.    On April 11, 2007, he was notified that he had failed a drug test for marijuana and that he was suspended.  On May 24, he was afforded a fitness hearing.  The TLC ALJ recommended his revocation on June 1.  On July 25, the chairman accepted that recommendation.

65.    Following his TLC drug test, Mr. Rothenberg took and passed a drug test administered by a physician employed by his health insurer.

66.    Before his 2007 drug test, Mr. Rothenberg had taken and passed at least a half dozen drug tests administered by the TLC and by physicians employed by his life insurer.

67.    Mr. Abood had been a New York City taxi driver since 2000.

68.    On May 4, 2006, he was notified that he had failed a drug test for marijuana and that he was suspended.  He was afforded a fitness hearing.  The TLC ALJ recommended his revocation on May 19.   The chairman accepted that recommendation.

69.    Mr. Kombo has been a New York City taxi driver since 1976.   Throughout that period he maintained an excellent driving record.

70.    Following a protracted dispute with his ex-wife, Mr. Kombo was charged with assaulting her on July 16, 2006.  On March 29, 2007, he pleaded guilty to assault in the second degree.  On May 4, he was afforded a fitness hearing.  The TLC ALJ recommended his revocation on May 15.  On June 20, the chairman accepted that recommendation.

### FIRST CLAIM FOR RELIEF / THE TLC TRIBUNAL

71.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

72.     Because of the nature of their employment and compensation, TLC judges in fitness hearings are systemically biased in favor of the agency.  Accordingly, no revocation hearing conducted within the TLC tribunal is consistent with due process of law.

73.     By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses revoked without a meaningful hearing, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

74.     All defendants have acted under pretense and color of state law, in their individual and official capacities, and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

75.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

### SECOND CLAIM FOR RELIEF /
### DUE PROCESS – SHAM HEARINGS

76.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

77. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses revoked without a meaningful hearing, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth  and Fourteenth Amendments of the United States Constitution.

78. All defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

79. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

### THIRD CLAIM FOR RELIEF / ADMINISTRATIVE CODE – RULEMAKING

80. Plaintiffs repeat and reallege paragraphs 1 through 67 as if the same were fully set forth at length herein.

81. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses revoked based on actions by TLC attorneys (or the TLC chairperson) acting without consultation with

or consent from the full TLC commission, defendants have violated and continue to violate the Administrative Code of the City of New York.

82.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

83.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

84.     By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses revoked based on actions by TLC attorneys (or the TLC chairperson) acting without consultation with or consent from the full TLC commission, defendants have violated and continue to violate the Administrative Code of the City of New York.

85.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## FOURTH CLAIM FOR RELIEF / ADMINISTRATIVE CODE

86.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

87.     By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses revoked based without authorization by statute defendants have violated and continue to violate the Administrative Code of the City of New York.

88.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

**FIFTH CLAIM FOR RELIEF /**
**TLC RULES**

89.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were

fully set forth at length herein.

90.    By implementing, promulgating, and continuing to enforce and/or effectuate a

policy, practice and custom pursuant to which taxi drivers may have their licenses revoked

based on actions by TLC attorneys (or the TLC chairperson) acting without consultation with

or consent from the full TLC commission, defendants have violated and continue to violate

the Administrative Code of the City of New York.

91.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs'

legal rights.

**SIXTH CLAIM FOR RELIEF / SEARCH & SEIZURE**

92.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were

fully set forth at length herein.

93.    By implementing, promulgating, and continuing to enforce and/or effectuate a

policy, practice and custom pursuant to which taxi drivers are subject to drug testing in the

absence of probable cause or reasonable suspicion, defendants have deprived and will

continue to deprive each and every plaintiff and members of the plaintiffs class of rights,

remedies, privileges and immunities guaranteed to every citizen of the State of New York in

violation of the New York State Constitution, Article 1, § 6. Defendants have conspired

among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to

prevent one another from doing so.

94.    All defendants acted under pretense and color of state law, in their individual

and official capacities and within the scope of their employment.  Said acts by said

defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse

of their powers, and said defendants acted willfully, knowingly, and with the specific intent

to deprive plaintiffs of their rights secured by the New York State Constitution, Article 1, §

6.

95.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs'

constitutional rights.

### SEVENTH CLAIM FOR RELIEF/ CORRECTIONS LAW

96.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were

fully set forth at length herein.

97.     By implementing, promulgating, and continuing to enforce and/or effectuate a

policy, practice and custom pursuant to which taxi drivers may have their licenses revoked

based solely on a criminal conviction, defendants have violated the New York Corrections

Law.

98.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs'

legal rights.

### EIGHTH CLAIM FOR RELIEF / New York State Constitution Art. 1, § 6

99.     Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were

fully set forth at length herein.

100.     By implementing, promulgating, and continuing to enforce and/or effectuate a

policy, practice and custom pursuant to which taxi drivers may have their licenses revoked

without due process of law, defendants have deprived and will continue to deprive each and

every plaintiffs and members of the plaintiffs class of rights, remedies, privileges and

immunities guaranteed to every citizen of the State of New York in violation of the New

York State Constitution, Article 1, § 6. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

101.    All defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights secured by the New York State Constitution, Article 1, § 6.

102.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

## NINTH CLAIM FOR RELIEF / CAPA

103.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

104.    The enactment of the TLC's drug test and criminal conviction revocation policies without a compliance with the City Administrative Procedure Act (CAPA) was in contravention of the New York City Charter.  As such the policy was void from the outset and all penalties administered thereunder are also void and of no force or effect.

105.     Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## TENTH CLAIM FOR RELIEF / CAPA – EX PARTE CONTACTS

106.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

107.    The TLC systemically engaged in *ex parte* contacts with TLC judges.  These contacts were in violation of CAPA as well as principles of legal ethics.  The results of all adjudications contaminated by such contacts are void and any penalties proscribed as a result of such adjudications are void and of no force or effect.

108.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

### ELEVENTH CLAIM FOR RELIEF / CAPA – IMPROPER HEARINGS

109.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if the same were fully set forth at length herein.

110.    The TLC systemically and specifically with regard to its revocation policy conducted hearings at which, *inter alia*, it failed to sustain the burden of proof and provided no opportunity for plaintiffs to call, subpoena or cross examine relevant witnesses.  The results of all such adjudications are void and of no force or effect.

111.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

### IRREPARABLE HARM

112.    As to each of the foregoing claims, if defendants' policy, practice and custom of revoking taxi driver licenses is not enjoined, the named plaintiffs and the members of the plaintiffs class will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiffs class will suffer continued violations of their rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article 1, §§ 6 and 12 of the New York State Constitution and under state law.

## RELIEF REQUESTED

WHEREFORE, plaintiffs ask this Court:

A.    To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) for the plaintiffs class described herein and naming plaintiffs as the class representatives.

B.    To enter a judgment declaring that defendants' policy, practice and custom concerning drug test and criminal conviction revocations is unconstitutional.

C.    To enter a judgment declaring that defendants' policy, practice and custom concerning drug test and criminal conviction revocations is illegal under state law.

D.    To enter a judgment declaring that defendants' hearing procedures are unconstitutional and in violation of state law.

E.    To issue an order enjoining preliminarily and permanently defendants' policy, practice and custom of revoking taxi licenses based on a drug test failure or a criminal conviction.

F.    To issue an order requiring defendants to reinstate the license of every taxi driver whose license has been unconstitutionally or unlawfully revoked.

G.    To award the named plaintiffs and members of the class compensatory damages in an amount to be determined at trial.

H.    To award the named plaintiffs and members of the class punitive damages in an amount to be determined at trial.

I.    To award the named plaintiffs and members of the class reasonable attorney's fees and costs.

J.      To grant such other and further relief as this Court shall find just and proper.


                                        Dated: New York, New York
                                               January 23, 2008


                                        __/s/_____
                                        Daniel L. Ackman (DA-0103)
                                        12 Desbrosses Street
                                        New York, NY  10013
                                        (917) 282-8178

                                        Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                                Plaintiffs,          08-civ-567 (SHS)

              -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                                Defendants.

X----------------------------------------------------------------X

# **<u>DEFAULT JUDGMENT</u>**

Defendants MATTHEW DAUS, JOSEPH ECKSTEIN, ELIZABETH BONINA,

THOMAS COYNE, THE NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, AND

THE CITY OF NEW YORK , having failed to plead or otherwise defend in this action, and

default having heretofore been entered upon application of plaintiffs; that defendants had been

defaulted for failure to appear pursuant to Rule 55(a) of the Federal Rules of Civil Procedure;

and that the claim is for a sum which can upon the hearing of evidence and by computation be

made certain; it is hereby

ORDERED, ADJUDGED, and DECREED that plaintiffs recover of the defendants the

sum to be determined, plus costs, attorneys' fees and interest according to law from the date of

this judgment until the entire amount is paid.

This judgment is entered by the Clerk at the request of the plaintiffs in accordance with

Rule 55(b)(1) of the Federal Rules of Civil Procedure.


Dated: New York, New York

_____


**J. MICHAEL McMAHON**
Clerk of the Court

By:

_____
Deputy Clerk