UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                                              Plaintiffs,        08-civ-567 (SHS)

        -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                                              Defendants.

X------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT**

      Defendants' opposition to plaintiffs' motion for a default judgment fails to identify any legal basis for their actions and is marred by half-truths and innuendo. Rather than undermining the motion, defendants' reply only strengthens the case for a default. Plaintiffs' motion should be granted and defendants' cross-motion denied.

**Defendants' Unexcused and Persistent Refusal to Answer**

      By this action, plaintiffs seek restoration of their taxi licenses and damages as those licenses were revoked without due process of law and without any basis in state law. Though they do not contest service, jurisdiction, venue, or the particularity of the complaint, defendants deliberately refused to answer. They adhered to their refusal even after they were warned that plaintiffs would seek entry of a default.

As defendants note, plaintiffs filed a substantially similar action in the Eastern District of New York. Defendants refused to answer there as well. Instead, they wrote a letter to Judge Irizarry requesting permission to move for a transfer to the Southern District and a consolidation with *Nnebe v. Daus,* 06 Civ. 4991 (RJS), a case pending before Judge Sullivan and previously before Judge Karas. Plaintiffs asked repeatedly for a conference, but none was scheduled. At that point, to safeguard the interests of the class, plaintiffs exercised their right to voluntarily dismiss that action and filed here instead.[1] But defendants still will not answer.

Rule 55 of the Federal Rules of Civil Procedure provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Defendants admit they have not answered. But they insist they have "otherwise defended." At the same time, they concede that they can cite no case even suggesting that a letter request for a transfer is "otherwise defending."

Fed. R. Civ. P. 12 provides that a summons and complaint shall be met with an answer or a motion (such as a motion to dismiss, for lack of jurisdiction, or for a more definite statement). Letter requests for a new judge are not listed. Consistent with the operation of the Federal Rules, the Fifth Circuit Court of Appeals stated in *Bass v. Hoagland*: "The words 'otherwise defend' refer to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits." 172 F.2d 205, 210 (5th Cir. 1949). While there are few cases on point, none we have seen contradict or quarrel with the *Bass v. Hoagland* construction of the term "otherwise defend."

---

[1] The facts asserted in this memorandum are stated and sworn to in the Reply Declaration of Daniel Ackman, sworn to March 3, 2008.

Defendants maintain that the Clerk of the Court erred in entering the default because they had indicated an "intention to defend." Def. Memo at 4. But there was no error: The Federal Rules require an answer or a dispositive motion, not an intention. In any event, the Clerk reviewed Mr. Ackman's declaration, which clearly stated that defendants have sought a transfer and an extension of time, as well as defendants' position. (*See* Declaration ¶¶ 3-6). But, the clerk knew, as defendants know, that such a request, unless granted, does not preclude a finding of default.

Defendants seem to be playing some sort of legal chicken, testing the patience of the court, seeing just how far they can go. Though we informed defendants of our intention to move for a default, they did not answer. We filed the motion. But they still do not answer. They cannot say they need more time: they have known about this action for months. They cannot say a consolidation request mitigates their duty. They cannot say that even if this case were reassigned, they would not have to answer. The Federal Rules apply in Judge Sullivan's courtroom, too.

**<u>Defendants' Default Was Willful, Even Calculated, and Should Not be Set Aside</u>**

Finally, defendants contend the default should be set aside. Under Rule 55(c), the entry of a default may be set aside "for good cause shown." As defendants note, the Court of Appeals has developed three criteria for assessing "good cause:" whether the default was willful; whether setting aside the default would prejudice the adversary; and whether a meritorious defense is presented. *E.g.*, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). But the key factor is willfulness. The Court of Appeals has held: "A default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991), citing *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138-1139 (2d Cir. 1987); *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61 (2d Cir. 1986); accord *La Barbera v. Whitney*

-3-

*Trucking, Inc.*, 245 F.R.D. 142, 146 (S.D.N.Y. 2007); *Hernandez v. La Cazuela de Mari Rest.*, Inc., 2007 U.S. Dist. LEXIS 42494 (E.D.N.Y. 2007) ("Despite any meritoriousness of an anticipated defense, a default judgment should not be vacated if the default was willful….").

Indeed, the usual reason for basis for a court finding that a default was not willful is some mistake, inadvertence, surprise, or excusable neglect. But where "a defendant knew about the complaint and failed to respond," a default judgment is proper and is rarely set aside. *See Gumbs & Thomas Publrs., Inc. v. Lushena Books*, 2003 U.S. Dist. LEXIS 6495 (E.D.N.Y. 2003).

Defendants argue, first, that the default was not "willful" (or that it was nonexistent). But this is not a case where a *pro se* defendant was confused, or a lawyer was careless. *E.g.*, *Greene v. Suggs*, 1999 U.S. Dist. LEXIS 684 (S.D.N.Y. 1999); *Hendricks v. New York City Bd. of Educ.*, 1998 U.S. Dist. LEXIS 19920 (S.D.N.Y. 1998). This was not "excusable neglect." *See Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). Defendants are represented by the Law Department of the greatest city in the world, an office 690 lawyers strong.[2] They know when an answer is required. They were reminded, but disregarded the reminder. *See* Letter from Ackman to Weinblatt, Weinblatt Decl. Exh. B. On February 14, Judge Stein issued an order saying the case was assigned to his court "for all purposes."[3] Still, no answer.

Defendants did request a consolidation and an enlargement of time. Though none was granted, they acted as if it was. Defendants do not even attempt the argument that an unfulfilled request waives the obligation to answer.

---

[2] See NYC Law Department website at http://www.nyc.gov/html/law/html/about/about.shtml.

[3] Plaintiffs' counsel interpreted this order as a denial of the consolidation request. *See* Feb. 15, 2008 e-mail from Ackman to Weinblatt, Weinblatt Decl. Exh. C. Even if that interpretation is incorrect, the relevant and uncontested point is that the request had not been granted.

Indeed, the February 14 order apparently denies their request. Ms. Weinblatt takes the opposite view, but the basis for that belief is murky. In her declaration, Ms Weinblatt states: "I telephoned Judge Stein's deputy and confirmed my understanding that the conference order was unrelated to the letter application to transfer the case to another judge." It is not clear if the deputy agreed with Ms. Weinblatt's understanding—Ms. Weinblatt does not say. But it is clear that she never relayed this conversation to plaintiffs' counsel. The e-mail exchange contains not one word about this phone call to chambers. *See* Exh. C of the Weinblatt Declaration. This silence is odd as plaintiffs' counsels' explicit understanding was to the contrary. *See* E-mails from Ackman to Weinblatt, Feb. 15, 2008 at 9:19 AM and 10:01 AM. At the end of the day, it is possible for defendants to believe that their request is still pending; but they cannot in good faith believe that its pendency absolves them of the duty to answer the complaint.

In the absence of a coherent excuse, one can only conclude that the refusal to answer was calculated. In counsel's experience, the TLC and its officers, aided by counsel, seek to delay civil rights class actions in every way possible. They did so in *Padberg v. McGrath-McKechnie*. Thus, what was, at bottom, a simple case took six year to reach judgment. They persistently fail to conform with discovery rules as well. *See, e.g., Nnebe v. Daus*, 2007 U.S. Dist. LEXIS 32981 (S.D.N.Y. 2007) (ordering the production of improperly withheld documents). Delay is always harmful to plaintiffs seeking redress, but in *Padberg*, it caused a particular and discernible injury to the class. In *Padberg*, approximately 100 members of the plaintiff class could not be located following the judgment. Because they could not be located, these class members were not paid. The dispersal of these class members saved defendants approximately $1.5 million. Defendants are certainly aware of these events, and the clear injury to the class. They seem to be starting down the same road. That is why, with their livelihoods in the balance, plaintiffs feel the need to force adherence with the Federal Rules.

The delay in this case so far (not counting the EDNY events) has been relatively minor. But the task of filing an answer is even more minor. Certainly, doing so would take much less effort than defending a default motion. One can only wonder why defendants would invite this motion. Perhaps they feel that claims by taxi drivers are not worthy of response. *Cf. Waul v. Coughlin*, 1995 U.S. Dist. LEXIS 5798, 11-12 (S.D.N.Y. 1995) ("The Court cannot help but believe that the failure of counsel to act in this case is due in large part to the status of the plaintiff as a prisoner and the type of claim at issue.")

Defendants claim meritorious defenses. But it is not enough to pronounce, as defendants do, that plaintiffs' claims "fail as a matter of law." To present a meritorious defense, defendants "need not establish [their] defense conclusively, but must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (internal citations and quotations omitted). "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *Sony Corp. v. Elm State Electronics, Inc.,* 800 F.2d 317, 320-21 (2d Cir. 1986). Though this bar is not especially high, defendants fail to clear it. They offer no facts whatsoever.

They do not cite facts, for example, that refute plaintiffs' claim that taxi drivers have no chance of winning revocation hearings—that the so-called hearings are rigged. They do not challenge the allegation that TLC judges are at-will employees who know they can be disciplined or fired for any reason or no reason or if they rule against the agency. They present no facts to contest that the TLC enforces unwritten policies that have never been lawfully enacted. Indeed, Ms. Weinblatt's declaration does not speak to their supposed defenses at all. Instead, they stand on "conclusory denials" of the kind that the Court of Appeals has found "insufficient." *Sony Corp.*, 800 F.2d at 320-321.

Not only do defendants fail to present a defense, they go a long way to admitting plaintiffs' claims. Defendants assert that the TLC hearing standards at issue are part of "a former policy of the agency" where revocation hearings were judged by the TLC's own per-diem at will judges. Def. Memo at 2. The plaintiffs here, of course, were subject to this former policy, which only ended—assuming it ended—late last year. Defendants say that since late last year, the TLC has quietly shifted revocation hearings to the Office of Administrative Trials and Hearings, whose judges are salaried, tenured and are not at-will employees of the TLC. The TLC made no public statement. It has offered no reason for the shift, none publicly and none in this action. But the reason is obvious: the TLC itself has come to realize that the TLC court hearings were shams that in no way conferred due process of law.

While plaintiffs here were afforded "a hearing" before a TLC judge, there were hearings in *Padberg*, too. The *Padberg* court found that the TLC hearings fell far short of due process standards. 203 F. Supp. 2d at 281-82. TLC hearings are before judges who are dependent on the prosecuting agency for the tenure of their offices, and the amount and payment of their salaries. This legal structure has been considered offensive to American justice ever since the Declaration of Independence, in which the Founders denounced the same arrangement to King George. Any court so constituted violates the right to due process of law. *See, e.g.*, *Tumey v. Ohio*, 272 U.S. 510 (1927). In any event, defendants' perfunctory assertions utterly fail to demonstrate "good cause" adequate to set aside the entry of a default.

To be sure, the federal courts prefer to resolve disputes on their merits. But where a well-represented defendant simply refuses to answer, a default judgment is an appropriate way to maintain an "'orderly efficient judicial system'" and to "'[enforce] compliance with the rules of procedure.'" *Sony Corp.*, 800 F.2d at 320 (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Civil 2d § 2693 at 478).

**Defendants Irrelevant and Misleading Statements about Plaintiffs' Counsel**

Defendants begin their memorandum of law with a derogation of plaintiffs' counsel. Though their denigration is also irrelevant it is so marred by serious and deliberate omissions that it cannot go unchallenged. Defendants write: "Over the past seven years, Mr. Ackman has filed a number of lawsuits challenging the NYC Taxi and Limousine Commission ("TLC") adjudication policies, including *Nnebe, et al. v. Daus, et al.*, 06-cv-4991 (RJS) ("*Nnebe*"), commenced in the Southern District of New York on October 28, 2006." Def. Memo at 2. No doubt defendants are attempting to insinuate that the actions were frivolous.[4] The opposite is true. Defendants fail to say that, with the exception of *Nnebe*—which is pending on motions for summary judgment—Mr. Ackman's clients prevailed *in every case* he filed.

In *Ackman v. Giuliani, et al.*, Mr. Ackman won a judgment declaring that TLC Courts shall be open to the public. Previously, the public and the press had been unlawfully excluded. *Ackman v. Giuliani, et al.*, NYLJ March 17, 2000. In *Padberg v. McGrath-McKechnie*, Mr. Ackman was lead counsel for a class of taxi drivers whose licenses had been suspended or revoked pursuant to the TLC's much heralded "Operation Refusal" sting initiative. First, plaintiffs won partial summary judgment in a ruling that found that TLC courts denied the suspended taxi drivers due process of law. 203 F. Supp. 2d 261, 281-82 (E.D.N.Y. 2002), *aff'd* 2003 U.S. App. LEXIS 4618 (2d Cir. 2003), *cert. denied*, 540 U.S. 967 (2003). Later, on the eve of trial, counsel reached a settlement that awarded the plaintiff class roughly $7 million in damages, plus attorneys' fees awarded to the prevailing party. The judgment specifically compensated the drivers whose licenses were revoked as well as those who were suspended, and restored their licenses. It was a complete victory. In *Smith v. McKechnie*, 01-cv-01786 (RJD),

---

[4] Defendants also state that just two of plaintiffs' claims are federal, asserting violations of due process. In fact, there are three federal claims. As in *Padberg*, there are also state claims, which are ancillary and closely intertwined with the federal. *See Padberg v. McGrath-McKechnie*, 2006 U.S. Dist. LEXIS 95174 (E.D.N.Y 2006).

an offshoot of *Padberg*, Mr. Ackman won a preliminary injunction ruling and a settlement awarding plaintiff $14,000 in damages, plus license restoration, plus attorneys' fees. These results cannot be unknown to defendants' counsel here as each action was defended by the same unit of the NYC Law Department that employs Ms. Weinblatt.

Finally, while *Nnebe* has yet to be decided, it appears to have already caused a reform of TLC practices. According to defendants' brief, the TLC has moved suspension and revocation hearings—which had been tried by the TLC's own hand-picked at-will judges—to the Office of Administrative Trials and Hearings instead. *See* Def. Mem. at n.1. Plaintiffs here suffered their revocations under the regime that the TLC has now abandoned.

## CONCLUSION

Defendants' default was deliberate, calculated for advantage, and indeed willful. They have not presented a meritorious defense. They have no excuse. Given these circumstances, a default judgment is merited, defendants' cross motion should be denied, and plaintiffs' motion should be granted. In the alternative, defendants should be required to answer the complaint within three days, foregoing any pre-answer motions.

Dated: New York, New York
      March 3, 2008

                                            ____/s/_____
                                            Daniel L. Ackman (DA-0103)
                                            12 Desbrosses Street
                                            New York, NY 10013
                                            (917) 282-8178

                                            Attorney for Plaintiffs