UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X

SAUL ROTHENBERG, EBRAHIM ABOOD AND
TOBBY KOMBO individually and on behalf of all others
similarly situated,

                                          Plaintiffs,        08-civ-567 (SHS)

        -Against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION,
AND THE CITY OF NEW YORK,

                                          Defendants.

X----------------------------------------------------------------X

### REPLY DECLARATION OF DANIEL L. ACKMAN

Daniel L. Ackman declares pursuant to 28 U.S.C. § 1746:

1. I am a member of the New York bar and attorney for the plaintiffs in this action. I submit this declaration in further support of plaintiffs' motion for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure and in opposition to defendants' cross-motion to set aside their default.

2. As defendants note, plaintiffs filed a substantially similar action in the Eastern District of New York. Defendants refused to answer there as well. Instead, they wrote a letter to Judge Irizarry requesting permission to move for a transfer to the Southern District and a consolidation with *Nnebe, et al. v. Daus, et al.*, 06-cv-4991 (RJS) ("*Nnebe*"), a case pending before Judge Sullivan and previously before Judge Karas. Plaintiffs asked repeatedly for a

conference, but none was scheduled. At that point, to safeguard the interests of the class, plaintiffs exercised their right to voluntarily dismiss that action and filed here instead.

   3. In their Memorandum of Law, defendants write: "Over the past seven years, Mr. Ackman has filed a number of lawsuits challenging the NYC Taxi and Limousine Commission ("TLC") adjudication policies, including *Nnebe*, commenced in the Southern District of New York on October 28, 2006." Def. Memo at 2. No doubt defendants are attempting to insinuate that the actions were frivolous.[1] In fact, with the exception of *Nnebe*—which is pending on motions for summary judgment—my clients prevailed *in every case* I filed.

   4. In *Ackman v. Giuliani, et al.*, I won a judgment declaring that TLC Courts shall be open to the public. Previously, the public and the press had been unlawfully excluded. *See Ackman v. Giuliani, et al.*, NYLJ March 17, 2000.

   5. In *Padberg v. McGrath-McKechnie*, I was lead counsel for a class of taxi drivers whose licenses had been suspended or revoked pursuant to the TLC's much heralded "Operation Refusal." First, we won partial summary judgment in a ruling that found that TLC courts denied the suspended taxi drivers due process of law. 203 F. Supp. 2d 261, 267-68 (E.D.N.Y. 2002), *aff'd* 2003 U.S. App. LEXIS 4618 (2d Cir. 2003), *cert. denied*, 540 U.S. 967 (2003). Later, on the eve of trial, I reached a settlement with defendants' counsel that awarded the plaintiff class roughly $7 million in damages, plus attorneys' fees awarded to the prevailing party. The judgment specifically compensated the driver whose licenses were revoked as well as those suspended, and restored their licenses.

---

[1] Defendants also state that just two of plaintiffs' claims are federal, asserting violations of due process. In fact, there are three federal claims. As in *Padberg*, there are also state claims. Those claims are ancillary and closely intertwined with the federal. *See Padberg v. McGrath-McKechnie*, 2006 U.S. Dist. LEXIS 95174 (E.D.N.Y 2006).

6.  In *Smith v. McKechnie*, 01-cv-01786 (RJD), which was a related case to *Padberg*, I won a preliminary injunction ruling and a settlement awarding plaintiff $14,000 in damages, plus license restoration, plus attorneys' fees.

7.  These results cannot be unknown to defendants' counsel here as each was defended by the same unit of the NYC Law Department that employs Ms. Weinblatt.

8.  Finally, while *Nnebe* has yet to be decided, the TLC apparently has already changed its practices in response. According to defendants' brief, the TLC has moved suspension and revocation hearings—which had been tried by the TLC's own hand-picked at-will judges—to the Office of Administrative Trials and Hearings instead. *See* Def. Mem. at n.1. Plaintiffs here suffered their revocations under the regime that the TLC has now abandoned.

9.  In her declaration, Ms Weinblatt states: "I telephoned Judge Stein's deputy and confirmed my understanding that the conference order was unrelated to the letter application to transfer the case to another judge." Ms. Weinblatt does not say whether the deputy agreed with her purported understanding. In any event, she never made any such claim to me. The e-mail exchange attached as an exhibit to Ms. Weinblatt's declaration contains nothing about this phone call to chambers.

10. In counsel's experience, the TLC and its officers seek to delay civil rights class actions in every way possible. As a result, what was, at bottom, a simple case took six years to resolve. They have persistently failed to conform with discovery rules as well. *See, e.g., Nnebe v. Daus*, 2007 U.S. Dist. LEXIS 32981 (S.D.N.Y. 2007) (ordering the production of improperly withheld documents). Delay is always harmful to plaintiffs seeking redress, but in *Padberg*, it caused a particular and discernible injury to the class. In *Padberg*, approximately

100 members of the plaintiff class could not be located and were, therefore, not paid. The loss of these class members saved defendants approximately $1.5 million.

11.    Defendants assert that the TLC hearing standards at issue are part of "a former policy of the agency" where revocation hearings were judged by the TLC's own per-diem at will judges. Def. Memo at 2. The plaintiffs here, of course, were subject to this former policy, which only ended—assuming it ended—late last year. Since late last year, defendants say the TLC has quietly shifted revocation hearings to the Office of Administrative Trials and Hearings, whose judges are salaried, tenured and are not at-will employees of the TLC. The TLC made no public statement. It has offered no reason for the shift, none publicly and none in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
March 3, 2008

_____/s/_____
Daniel L. Ackman