UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SAUL ROTHENBERG, EBRAHIM ABOOD,
TOBBY KOMBO, KONSTANTINOS
KATSIGIANNIS, BOUBACAR DOUMBIA,
ROBERT DYCE, and MOUSTACH ALI,
individually and on behalf of all others similarly
situated,

       Plaintiffs,

  -against-

MATTHEW DAUS, DIANE MCGRATH-
MCKECHNIE, JOSEPH ECKSTEIN, ELIZABETH
BONINA, THOMAS COYNE, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION and
THE CITY OF NEW YORK,

       Defendants.

------------------------------------------------------------x

08 Civ. 00567 (SHS)

ORDER

SIDNEY H. STEIN, U.S. District Judge.

  Plaintiffs and defendants have filed motions for summary judgment pursuant to Fed R. Civ. P. 56. On September 8, 2010, Magistrate Judge Ronald L. Ellis issued a Report and Recommendation detailing the factual and procedural history of this action and recommending that defendants' motion for summary judgment be granted and that plaintiffs' motions for partial summary judgment be denied. Plaintiffs filed timely objections and defendants responded. After *de novo* review of the Report and Recommendation, plaintiffs' objections, and defendants' objections, *see* 28 U.S.C. § 636(b)(1)(B)-(C), the Court adopts the Report and Recommendation in its entirety, except as to the following two issues.

  First, the heading of section III(B)(3) of the Report and Recommendation should more properly be titled "The TLC's Post-Deprivation Procedures Afforded Plaintiffs' Due Process" rather than "The TLC Provided Plaintiffs with Sufficient Pre-Deprivation Due Process," because plaintiffs' licenses were suspended before they were afforded a hearing to contest the suspension.

While due process often "requires an opportunity for a hearing before a deprivation of property takes effect," *Brody v. Vill. of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 88 (1972)), "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause," *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Here, as discussed at length in *Nbebe v. Daus*, 665 F. Supp. 2d 311 (S.D.N.Y. 2009), the government's interest in ensuring the "safety of the taxi-riding public and maintaining the public's trust in the safety of taxis" supports the TLC's decision to summarily suspend taxi drivers who tested positive for drugs or who were arrested or convicted of crimes.[1] *Id.* at 324 (citation omitted). Moreover, the TLC is required by statute to offer a prompt post-deprivation hearing to taxi drivers whose licenses have been suspended. *See* Admin. Code § 19-512.1(a).

Second, although the Report and Recommendation properly determined that Dyce was afforded due process because an Article 78 proceeding in state court provides a "wholly adequate" mechanism for challenging a specific decision of a state or municipal agency (Rep. & Rec. at 25-26), this Court also finds that there is no genuine issue of material fact as to whether Dyce was deprived of fair notice that his license might be suspended and revoked if he committed a fraud-related crime involving his taxicab. Although a "law or regulation whose violation could lead to . . . a deprivation [of property] must be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them," it "need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *Piscottano v. Murphy*, 511 F.3d 247, 280 (2d Cir. 2007) (internal quotation marks and citation omitted). The "question of whether a statute or regulation is unconstitutionally vague is determined by whether it afforded fair notice to the

---

[1] Dyce and Ali were convicted of Possession of a Forged Instrument in the Third Degree and Driving While Ability Impaired, respectively, before the TLC suspended their licenses. (*See* Decl. of Amy J. Weinblatt dated May 25, 2010 ("Weinblatt Decl."), Exs. 96-97, 109-10.) Kombo was arrested for Assault in the Second Degree before his license was suspended and was convicted of that offense before his license was revoked. (*Id.* at Exs. 28-30, 40.)

2

plaintiff to whom it was applied." *Id.* Additionally, the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 281 (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982)).

In this action, several rules and regulations, independently and in combination, provided Dyce with fair notice. First, the New York City Charter states that "[a] driver shall not use . . . his taxicab for any unlawful purpose" and that "[a] driver shall immediately inform the [TLC] when convicted of any crime." Charter, Ch. 35, §§ 2-61(b), 6-15(e). Second, the New York City Administrative Code and the TLC Rules contained provisions that provide for the summary suspension of a license "for good cause shown relating to a direct and substantial threat to the public health or safety," Admin. Code § 19-512.1, or "[i]f the Chairperson finds that emergency action is required to insure public health or safety, he/she may order the summary suspension of a license or licensee . . . ." Charter, Ch. 35, § 8-16.[2] Third, section 19-505 of the Administrative Code states that all applicants for a license must "[b]e of good moral character" and that the TLC "may, after a hearing, suspend or revoke any driver's license for failure to comply with" this provision. Admin. Code § 19-505(b)(5), (l).

Here, Dyce had pled guilty to Possession of a Forged Instrument in the Third Degree, a Class A misdemeanor, before his license was suspended or revoked. (Exs. 96-97 to Weinblatt Decl.) Dyce's arrest occurred when police pulled over his taxicab for displaying a "police department insignia on a parking badge" that permitted him to park in "an otherwise restricted zone." (Am. Compl. ¶ 128.) Based on the previously cited rules and regulations prohibiting the use of taxicabs for unlawful purposes, mandating that drivers immediately report their conviction of a crime to the TLC, and requiring that license holders be "of good moral character," Dyce's

---

[2] On December 2, 2006, TLC Rule 8-16 was amended to add subsection (c), which provides that the TLC Chairperson may suspend a license based upon "an arrest on criminal charges" that the Chairperson determines is "relevant to the licensee's qualifications for continued licensure." Charter, Ch. 35 § 8-16(c). This subsection, however, was not yet in effect at the time Dyce was arrested in April 2006.

3

assertion that he did not have "fair notice" strains credulity. Indeed, Dyce had ample notice that the TLC might summarily suspend his license, as the rules allow, based on a finding that in light of his plea of guilty to Possession of a Forged Instrument, he represented a threat to "public health or safety." Admin. Code § 19-512.1; Charter, Ch. 35 § 8-16(c).

Accordingly, it is hereby ORDERED that Magistrate Judge Ellis's Report and Recommendation be adopted with the additional conclusions noted above. As recommended by Magistrate Judge Ellis, defendants' motion for summary judgment is granted (Dkt. # 76) and plaintiffs' motions for partial summary judgment are denied (Dkt. # 48 and # 85).

Dated: New York, New York
September 30, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.