# DANIEL L. ACKMAN

ATTORNEY AT LAW

_____

222 BROADWAY, 19TH FLOOR  o  NEW YORK, NY 10038
TEL: 917-282-8178
E-MAIL: d.ackman@comcast.net

September 9, 2015

**BY ECF:**
Hon. Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  Rothenberg et al. v. Daus et al., No. 08-CV-00567 (SHS)

Your Honor:

As counsel to plaintiffs in the above-referenced action, we are writing to alert the Court to a recent decision by Judge Berman in *National Football League Management Council v. National Football League Players Ass'n*, __ F.Supp.3d __, 2015 WL 5148739 (S.D.N.Y. Sept. 3, 2015) ("*NFLMC*," attached). This decision in the widely publicized "Deflategate" case determined whether NFL Commissioner Roger Goodell's Arbitration Award imposing a four game suspension on New England Patriots quarterback Tom Brady should be confirmed or vacated. Judge Berman held that Brady's suspension must be vacated because the player was denied due process of law and specifically fair warning of the law that the commissioner applied in ordering the suspension.

Judge Berman concluded, "Although judicial scrutiny of arbitration awards necessarily is limited, … [t]he deference due an arbitrator does not extend so far as to require a district court to countenance, much less confirm, an award obtained without the requisites of fairness or due process." *Id*. at *9 (internal quotation and citation omitted). Judge Berman held that Brady was denied due process because NFL rules did not clearly permit the suspension of a player for participating in the deflation of game balls.

The commissioner had ordered the suspension after an NFL investigation found that Brady was "at least generally aware" that other Patriot employees had deflated footballs prior to a playoff game so that they would be easier to throw and catch, because of his "failure to cooperate fully and candidly with the investigation" of the matter, and because he provided "testimony that the [NFL investigatory report] conclude[d] was not plausible and contradicted by other evidence." Judge Berman did not reject any of these findings and indeed "accept[ed] the facts as the arbitrator found them." *Id*. at * 11. There was also no question that NFL rules prohibited the deflating of footballs to air pressures below league standards. Still, he vacated the

award because the NFL rules did not afford the quarterback notice that his conduct could be penalized by a suspension (as opposed to a monetary fine). The award could not be confirmed, the court concluded, because "Any disciplinary program requires that individuals subject to that program understand, with reasonable certainty, what results will occur if they breach established rules." *Id*. at * 10 (internal quotation omitted).

In the *NFLMC* case, league rules did not allow for that understanding. Even if Brady knew about or tacitly authorized the deflating of the footballs in order to gain a competitive advantage, he had no notice that he could receive a four-game suspension for general awareness of ball deflation by others or for his non-cooperation with the ensuing investigation. The court held that Brady also had no notice that his discipline would be the equivalent of the discipline imposed upon a player who used performance-enhancing drugs. *Id*. at * 11.

In the absence of a specific rule, the NFL attempted to rely on a general rule barring "conduct detrimental to the NFL."  But Judge Berman rejected the league's argument that the general "conduct detrimental" policy could allow for the suspension, calling the argument "legally misplaced." *Id*. at * 16. He concluded, "[A]n applicable specific provision" regarding equipment violations "is better calculated to provide notice to a player than a general concept such as 'conduct detrimental.'" *Id*. Thus, Judge Berman vacated the arbitration award as being inconsistent with due process.

* * *

While none of the plaintiffs in the case at bar are Super Bowl champions, the legal parallels are clear and the rule of law should be the same. TLC rules did not specifically advise drivers that there could be *any* TLC-imposed penalty for off-duty crimes (as opposed to on-duty criminal acts) or that drivers faced an automatic revocation for a positive drug test. In the absence of established rules as to off-duty criminal convictions, the TLC attempts to rely on a general rule requiring "good moral character." For the drug test penalty, the TLC relies on regulatory history. But, as with NFL players, a taxi driver's "right to notice is at the heart … of our criminal and civil justice systems." *Id*. at * 15. Thus, based on Judge Berman's decision as well as on the recently enacted Fair Chance Act, we submit that this Court's conclusion on summary judgment should be reargued or reconsidered.

Respectfully,

/s/

Dan Ackman
Norman Siegel

Encl.

cc: Amy Weinblatt, Esq. (by ECF)
    Jerald Horowitz, Esq. (by ECF)